# EXHIBIT 1



# OCEAN SPRAY WAVE

| | |
|---|---|
| **Reg. No. 4,641,901** | OCEAN SPRAY CRANBERRIES, INC. (DELAWARE CORPORATION) <br> ONE OCEAN SPRAY DRIVE |
| **Registered Nov. 18, 2014** | LEGAL DEPARTMENT <br> LAKEVILLE-MIDDLEBORO, MA 02349 |
| **Int. Cl.: 32** | FOR: FRUIT JUICE AND FRUIT JUICE DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48). |
| **TRADEMARK** | FIRST USE 12-12-2013; IN COMMERCE 12-12-2013. |
| **PRINCIPAL REGISTER** | THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR. |
| | OWNER OF U.S. REG. NOS. 1,963,144, 2,093,144, AND 2,150,919. |
| | SN 85-883,886, FILED 3-22-2013. |
| | KAPIL BHANOT, EXAMINING ATTORNEY |



Deputy Director of the United States
Patent and Trademark Office

<div style="border: 1px solid black; padding: 10px;">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.
>
> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

<div style="border: 1px solid black; padding: 10px;">

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

</div>

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the USPTO website for further information.   With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Thu Apr 22 03:47:23 EDT 2021

[TESS HOME] [NEW USER] [STRUCTURED] [FREE FORM] [BROWSE DICT] [SEARCH OG] [BOTTOM] [HELP] [PREV LIST] [CURR LIST] [NEXT LIST]
[FIRST DOC] [PREV DOC] [NEXT DOC] [LAST DOC]

[Logout]  Please logout when you are done to release system resources allocated for you.

[Start]  List At: ____  OR  [Jump]  to record: ____   **Record 2 out of 2**

[TSDR] [ASSIGN Status] [TTAB Status]  *( Use the "Back" button of the Internet Browser to return to TESS)*

# OCEAN SPRAY WAVE

| | |
|---|---|
| **Word Mark** | OCEAN SPRAY WAVE |
| **Goods and Services** | IC 032. US 045 046 048. G & S: fruit juice and fruit juice drinks. FIRST USE: 20131212. FIRST USE IN COMMERCE: 20131212 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85883886 |
| **Filing Date** | March 22, 2013 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 28, 2014 |
| **Registration Number** | 4641901 |
| **Registration Date** | November 18, 2014 |
| **Owner** | (REGISTRANT) Ocean Spray Cranberries, Inc. CORPORATION DELAWARE One Ocean Spray Drive Legal Department Lakeville-Middleboro MASSACHUSETTS 02349 |
| **Attorney of Record** | Julia Anne Matheson |
| **Prior Registrations** | 1963144;2093144;2150919 |
| **Type of Mark** | TRADEMARK |

| | |
|---|---|
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS Home | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

# EXHIBIT 2

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**Andrew Levine, Esq.**
Partner
levine@braunhagey.com

April 9, 2021

**VIA EMAIL AND U.S. MAIL**

Tom Hayes
President and CEO
Joseph L. Harrington
General Counsel
Ocean Spray Cranberries, Inc.
1 Ocean Spray Drive
Lakeville, MA 02349
Email: thayes@oceanspray.com
       jharrington@oceanspray.com

Re:   Notice of Infringement of NEW WAVE® Trademark and Trade Dress
      Demand for Assurances and Preservation of Records

Dear Messrs. Hayes and Harrington:

    We are litigation counsel to Wave Soda LLC ("Wave"), makers of NEW WAVE® Soda ("Wave Soda") and owner of the registered trademark NEW WAVE®. We write regarding Ocean Spray Cranberries Inc.'s ("Ocean Spray's") infringement of Wave's trademark and trade dress rights through a new line of soda products called "Ocean Spray Wave" (the "Infringing Products"). We request that Ocean Spray immediately modify Ocean Spray Wave's branding and trade dress to stop its infringement.

    It is clear that Ocean Spray knows a good opportunity when it sees one. For example, it was a brilliant piece of marketing to ride the wave of the Ocean Spray Guy's "dreamy" and viral TikTok video. But Ocean Spray cannot do the same with Wave Soda. As you know, Wave created a new, better-for-you soda product that has attracted a growing number of consumers looking for healthier soda options. This new market segment is big and exciting. There is room for new products and Wave has no objection if Ocean Spray wants to compete fairly for consumers. But unlike the Ocean Spray Guy, Wave has a federally protected, trademarked product and distinctive trade dress associated with its Wave Soda brand. It has no interest in permitting Ocean Spray to freeride off its trademark, trade dress and growing popularity with consumers by sowing confusion.

    Wave is a rapidly-growing beverage company based in San Marcos, California. The company was founded in 2016 by Nat Noone, a beverage industry veteran and self-described soda fanatic who wanted to offer consumers a healthier, tastier alternative to sugary drinks and bland seltzers. Wave's growing team shares Nat's passion for beverages and an active

**San Francisco**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

April 9, 2021
Page 2

lifestyle—the Wave Soda surfboard and VW van are not just for show.  Wave also donates a portion of its sales to help not-for-profit organizations such as the Breast Cancer Foundation through its monthly non-profit donation program.



Together, this group, many of whom have worked closely together for years in the beverage industry, pioneered an entirely new product category by launching Wave Soda, which combines simple ingredients – sparkling water, fruit juice, and a small amount of caffeine – into a soda alternative that is healthier and tastier than traditional sugary sodas and sparkling waters.  Consumers have responded, making Wave Soda one of the fastest-growing beverage brands in the United States, with millions of dollars in annual sales in thousands of stores across the country.  Wave Soda has since been heralded as a brand on the rise by the news media and industry press, including being named one of the "Best Healthy Sodas" by *Shape Magazine* and winning *Beverage Digest'*s "Best Packaging and Label Design" award in 2020.  Wave is poised to continue growing as one of the hottest and most successful beverage start-ups in the country.  To help with this growth, Wave Soda has financial backing from some of the largest players in the beverage industry, including AB InBev's ZX Ventures.

Wave is the owner of the federally-registered trademark NEW WAVE® in International Class 32 (U.S. Reg. No. 5571632) and related trademark and trade dress rights.  Its distinctive trademark and trade dress appear as follows:



Wave has invested considerable time, money, and effort to develop, market, advertise, and grow its brand and consumer goodwill.  The Wave Soda mark and brand has received tens of millions of dollars in advertising exposure and is prominently featured in nationwide advertising

April 9, 2021
Page 3

campaigns, including on Facebook, Instagram, Twitter, and other social media. As a result of its success in these efforts, Wave Soda is an exceptionally popular national brand with highly distinctive trademarks and trade dress.

It has come to Wave's attention that Ocean Spray has recently launched for sale and begun marketing a nearly identical line of sparkling beverage products called "Ocean Spray Wave" (the "Infringing Products"). The Infringing Products have no relationship to Ocean Spray's defunct line of sugary fruit juices called "Wave," which were discontinued at least as early as 2017. Instead, like Wave Soda, the Infringing Products are marketed as a healthier alternative to sugary sodas and are made by mixing sparkling water, fruit juice, and small amounts of caffeine. Troublingly, the Infringing Products also feature branding and trade dress that are confusingly similar to the NEW WAVE® Soda trademark and trade dress:



The Infringing Products have only just launched in Sam's Club locations and the Walmart.com website but are already producing confusion in the marketplace. Wave already has been contacted by consumers, distributors and members of the press to inquire about the Infringing Products. A distributor based in Virginia expressed the view that Ocean Spray is "ripping off" Wave Soda. Industry press have also noted that the "new line's identity would

April 9, 2021
Page 4

seem to overlap a bit with lightly sweetened and caffeinated sparkling entry called Wave Soda launched by bev vet Nat Noone." *Beverage Business Insights*, Vol. 18 No. 41, March 4, 2021.

Beyond this remarkable visual similarity between NEW WAVE® Soda and the Infringing Products, Ocean Spray's marketing pitch for the Infringing Products is virtually identical to the marketing of Wave Soda as a new product category offering. By way of example, the Wave Soda website states:

> What started as a local fruit stand is now an all-natural, healthy soda brand that's sold and distributed across the country. Founder and CEO, Nat Noone, saw a need in the beverage industry for a guilt-free carbonated drink, with the added benefit of caffeine, so Wave Soda came to be.

Similarly, Ocean Spray's inaugural press release announcing the Infringing Products sought to position Ocean Spray Wave in the exact same market niche that Wave Soda pioneered, a new product category that "bridges the gap" between soda and healthier carbonated drinks:

> Ocean Spray Wave bridges the gap for consumers who want a lightly caffeinated option – with the convenience and flavor of soda – but without the added sugars.

The similarities between the Infringing Products and Wave Soda is not random. Rather, it appears that Ocean Spray observed Wave Soda's success and then decided to launch the Infringing Products into the exact same space using confusingly similar trademarks, trade dress, and marketing themes.

There is little question that the launch of the Infringing Products has already caused consumer confusion, which only will increase if the Infringing Products are launched more broadly at retail stores beyond Walmart and Sam's Club. Given the strength of Wave Soda's NEW WAVE® trademark and trade dress; the similarity of the Infringing Products, their mark and trade dress to Wave Soda's trademark and trade dress; the proximity of the product's marketing and retail channels; and their direct competition for consumers, we are confident that a court will find a strong likelihood of confusion under the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). Moreover, while Wave has not yet had the benefit of discovery, internal Ocean Spray documents are likely to reveal that Ocean Spray was aware of Wave's pioneering product and decided to copy its formula, trademark, trade dress, and marketing strategy. Such willful infringement will give rise to liability for treble damages and attorneys' fees, as well as an injunction against further infringement. *See, e.g.*, 15 U.S.C. § 1117(a); 15 U.S.C. § 1116(a); Cal. Bus. & Prof. Code § 17200, *et seq*. And while it is inconceivable that Ocean Spray was unaware of Wave Soda when it launched the infringing products, Wave will be entitled to obtain disgorgement of Ocean Spray's profits on the Infringing Products without needing to prove willfulness. *See Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. ___, 140 S. Ct. 1492 (2020).

While Wave would prefer to reach an amicable resolution to this dispute, it cannot tolerate willful infringement of its trademark and trade dress and the swamping of its brand

April 9, 2021
Page 5

identity; nor will it sit back and wait as Ocean Spray seeks to expand into new retail outlets and launch more Infringing Products. Thus, there is a limited opportunity open to the parties to discuss a path forward that does not include a court order barring Ocean Spray from continuing to market and sell the Infringing Products altogether.

Please let us know by no later than Tuesday, April 20, 2021, whether Ocean Spray will agree to modify its packaging for the Infringing Products to remove the prominent "WAVE" mark from its packaging and marketing materials. Our client would be willing to consider a sell-through of a portion of Ocean Spray's existing inventory at Walmart and Sam's Club as part of a negotiated resolution, but cannot permit Ocean Spray to produce any more Infringing Product or expand those productions into new retail channels. Unless the parties can reach a mutually satisfactory resolution, Wave intends to file suit to remedy Ocean Spray's infringement in the United States District Court for the Southern District of California.

Meanwhile, please confirm that Ocean Spray and its affiliates will promptly institute a document preservation and litigation hold on all documents, things, and electronically stored information related to the Infringing Products, Wave Soda, the NEW WAVE® trademark, Wave and its products or this dispute, including but not limited to communications and other information on email accounts, cell phones, chat applications, cloud storage devices and other repositories.

      Sincerely,

      */s/ Andrew Levine*

      Andrew Levine

# EXHIBIT 3



<div align="center">
Julia Anne Matheson<br>
Potomac Law Group, PLLC<br>
1300 Pennsylvania Avenue, NW, Suite 700<br>
Washington, D.C. 20004<br>
Telephone: (202) 251-6920<br>
jmatheson@potomaclaw.com
</div>

**CONFIDENTIAL AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION**

<div align="center">April 20, 2021</div>

Andrew Levine, Esq().                                                                 VIA EMAIL
Buran Hagey & Borden LLP
351 California Street
10th Floor
San Francisco, CA 94104

<div align="center">Demand Letter re OCEAN SPRAY WAVE Mark</div>

Dear Mr. Levine,

     We are outside trademark counsel to Ocean Spray Cranberries, Inc. Your April 9, 2021 letter to Ocean Spray was referred to us for response. Please direct all future correspondence on this matter to our attention.

     As the owner of multiple valuable trademarks, Ocean Spray understands the necessity of actively policing a trademark portfolio. However, after carefully considering the allegations in your letter, we must respectfully disagree with your assertions of trademark and trade dress infringement and decline to advise our client to accede to your demands.

    **1.  WAVE**

    As you know, your client does not own a trademark registration for the word WAVE. In fact, your client was unable to register this mark *(c.f.* abandoned application Serial No. 88092312) because of a longstanding prior registration for WAVE, Reg. No. 3954769, for "beverages, namely, flavored water" owned by Hatsman Holding LLC, the owner of a number of WAVE registrations. As I am sure you are also aware, that mark is in use. And, indeed, the registrant recently filed its required declaration of use and enclosed this specimen:

Andrew Levine, Esq
April 20, 2021
Page **2** of **3**



     As such, we are puzzled by your suggestion that your client owns unique rights in the mark WAVE, much less WAVE for sparkling beverages sold in a can with fruit on the label. The fact that your client had to re-file for <u>NEW</u> WAVE in an attempt to get past this prior registration is tantamount to an admission that your client believed that its addition of the term NEW created a sufficiently distinct commercial impression to render confusion unlikely. We assume the Examiner who approved your application for publication was influenced by the numerous coexisting third-party WAVE-formative marks for beverages (*e.g.*, HAWAIIAN WAVE, SPARKLING WAVE, DRINK WAVE, JUICE WAVE, and many others).

2. **NEW WAVE vs OCEAN SPRAY WAVE**

     Given the above, we assume that your client claims rights only in the word mark NEW WAVE. Your letter advises that your client was founded in 2016. Your client's trademark application was filed June 21, 2017 (in the name of Wedge Water, LLC, not Wave Soda, LLC), and claims a first use date of January 10, 2017. We trust, therefore, that your client's claimed rights in this mark do not predate 2017.

     Our client, on the other hand, owns a federal registration for OCEAN SPRAY WAVE, Reg. No. 4641901, for "Fruit juice and fruit juice drinks." Our client's rights under this registration date back to at least as early as 2013. Our client's use of this mark on the sparking fruit juice products cited in your letter is clearly covered by this registration. As such, it is not correct for you to claim that this brand is "defunct." Indeed, were these marks to be found confusingly similar, which is not conceded, our client would have priority. It is thus highly unlikely that a court would order our client to cease and desist use of its mark.

3. **Trade Dress**

     Your letter also asserts a claim of trade dress infringement, but fails to articulate at all, much less with the required degree of specificity, the elements that you claim

Andrew Levine, Esq
April 20, 2021
Page **3** of **3**

comprise this common law right.  Without the benefit of knowing what you claim as trade dress, we have nevertheless compared the products as set forth in your letter. We can dismiss a white background as nondistinctive in the soft drink can category.  Our client's trade dress otherwise consists of the famous OCEAN SPRAY Wave Logo, a motif associated with our client for over 50 years, as part of the composite mark OCEAN SPRAY WAVE, as well as drawings of fruit which serve to describe and amplify the flavors of the products.  Our client's trade dress does not contain any imagery referencing a surfing or VW van motif, which your own letter emphasizes is a key element of your client's branding.  Nor are *any* of the nonwhite colors the same.

Your letter also asserts that Ocean Spray has deliberately imitated your client's trade dress.  Our client advises that that is not the case.  Accordingly, unless you have actual evidence of this to inform due diligence as to information and belief, we caution you against making such assertions in any public forum.

4. **Other Matters**

The comparison of advertising copy in your letter is also puzzling, as there is, in fact, no similarity whatsoever.  Unless your client is asserting that it owns the entire trending category of sparkling fruit juice with a touch of caffeine, this aspect of your letter does not even merit a response.

The comment of a distributor is neither persuasive nor relevant, as it reflects that he or she is obviously not confused.

You letter also implies that you intend to seek a court order absent prompt and total capitulation by Ocean Spray.  We are confident that no court would grant you a preliminary injunction given our client's prior registered rights, which, along with the other issues we have raised here, would call into doubt your client's chances of success on the merits.  While Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced to counterclaim, at the very least, to cancel your client's registration based on our client's prior rights.

In view of the above, we are unable to advise our client to accede to your overreaching demands.

This letter is without prejudice to, and does not waive, any claims or defenses not asserted herein.

Sincerely,

Julia Anne Matheson
Janet F. Satterthwaite