**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

OCEAN SPRAY CRANBERRIES, INC.,

               Plaintiff,

v.

WEDGE WATER, LLC D/B/A WAVE SODA,

               Defendant.

C.A. No. 1:21-cv-10669-MLW

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**</u>

Dated:  May 3, 2021

Respectfully Submitted,

WEDGE WATER, LLC
D/B/A WAVE SODA,

*By its attorneys*,

Keith Toms (BBO# 663369)
Alexander T. Hornat (BBO# 687588)
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Phone: 617-449-6500
ktoms@mccarter.com
ahornat@mccarter.com

Andrew Levine (*pro hac vice pending*)
J. Tobias Rowe (*pro hac vice pending*)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Phone: 415-599-0210
levine@braunhagey.com
rowe@braunhagey.com

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................ iii

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND .................................................................................. 3

    A.    Wave Discovers Ocean Spray's Infringement, Sends a Cease-and-Desist Letter, and Engages in Good-Faith Settlement Negotiations .......... 3

    B.    Ocean Spray Aborts Settlement Discussions by Hastily Filing a Complaint; Wave Sues in California ....................................................... 4

    C.    Wave and Ocean Spray Operate Extensively in California; Wave Has Virtually No Ties to Massachusetts ....................................................... 5

    D.    Wave Requested the Ocean Spray Agree to Transfer this Action Prior to Filing this Motion Spray Refused .................................................. 7

III.    ARGUMENT ....................................................................................... 7

    A.    The First Filed Rule Must be Disregarded Where, As Here, There are Special Circumstances .......................................................... 8

    B.    Because Public Policy Promotes Extrajudicial Dispute Resolution, the Court Should Not Condone Ocean Spray Misleading Wave in Its Sprint to The Courthouse .................................................................. 9

        1.    Ocean Spray Misled Wave Regarding Its Intentions and Then Raced to the Courthouse ...................................................... 10

        2.    Ocean Spray's Request for Declaratory Relief Only Makes Plain that this Action Is a Preemptive Strike ................................ 13

    C.    The Balance of Convenience and Public Interest Substantially Favor Transfer to California .................................................................... 14

        1.    Ocean Spray's Choice of Forum Is Not Afforded Much, If Any, Weight Because It Misled Wave and Sprinted to the Courthouse ................................................................................... 15

        2.    The Parties Are in California ...................................................... 16

        3.    Key Witnesses and Documents Are in California ........................ 17

i

4.    The Center of Gravity for This Case is Business Activity in the Southern District of California ................................................ 17

5.    California Law Must Be Applied First in This Trademark Dispute ........................................................................................ 18

6.    The Public Interest Also Favors the California Forum ................. 18

IV.    CONCLUSION .................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*Biogen, Inc. v. Schering AG,*

    954 F. Supp. 391 (D. Mass. 1996) .................................................................................. 2, 9, 15

*Biolitec, Inc v. Angiodynamics, Inc.,*
    581 F. Supp. 2d 152 (D. Mass. 2008) ................................................................................. 9, 14

*Braintree Labs., Inc. v. Bedrock Logistics, LLC,*
    No. 16-11936-IT, 2016 WL 7173755 (D. Mass. Dec. 8, 2016) .............................................. 13

*Brant Point Corp. v. Poetzsch,*
    671 F. Supp. 2 (D. Mass. 1987) ............................................................................................. 17

*Cianbro Corp. v. Curran-Lavoie, Inc.,*
    814 F.2d 7 (1st Cir. 1987) ........................................................................................................ 8

*Codex Corp. v. Milgo Elec. Corp.,*
    553 F.2d 735 (1st Cir. 1977) ................................................................................................... 9

*Comfort v. Lynn Sch. Comm.,*
    150 F. Supp. 2d 285 (D. Mass. 2001) ................................................................................... 14

*Davox Corp. v. Digital Sys. Int'l, Inc.,*
    846 F. Supp. 144 (D. Mass. 1993) ................................................................................. passim

*DePianti v. Jan-Pro Franchising Int'l, Inc.,*
    No. 08-10663-MLW, 2016 WL 4771056 (D. Mass. Sep. 13, 2016) ...................................... 18

*Dorpan v. Hotel Meliá, Inc.,*
    728 F.3d 55 (1st Cir. 2013) ................................................................................................... 18

*Dress v. Capital One Bank (USA),*
    368 F. Supp. 3d 178 (D. Mass. 2019) ................................................................................... 15

*Dupont Pharmaceuticals Co. v. Sonus Pharms., Inc.,*
    122 F. Supp. 2d 230 (D. Mass. 2000) ............................................................................. 15, 18

*Edvisors Network, Inc. v. Educational Advisors, Inc.,*
    755 F. Supp. 2d 272 (D. Mass. 2010) ............................................................................... 6, 17

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.,*
    No. 12-10551-NMG, 2012 WL 12941889 (D. Mass. Sept. 28, 2012) ............................... 2, 10

*Flood v. Carlson Restaurants, Inc.,*
    94 F. Supp. 3d 572 (S.D.N.Y. 2015) ..................................................................................... 16

*Genentech, Inc. v. Eli Lilly and Co.,*
    998 F. 2d 931 (Fed. Cir. 1993) .............................................................................................. 15

*Hilliard v. Credit Suisse First Bos. LLC,*
    No. 8:06CV285, 2006 WL 2239014 (D. Neb. Aug. 3, 2006) ................................................. 13

*Hilsley v. Ocean Spray Cranberries, Inc.,*
    No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018) ................. 6, 16

*Johnson v. N.Y. Life Ins. Co.,*
    No. 12-cv-11026, 2013 WL 1003432 (D. Mass. 2013) .......................................................... 15

*Kleinerman v. Luxtron Corp.,*
    107 F. Supp. 2d 122 (D. Mass. 2000) ....................................................................... 2, 11, 14

*Major v. Ocean Spray Cranberries, Inc.*,
  No. 5:12-CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013) ........................... 6, 16

*Mercier v. Sheraton Int'l, Inc.*,
  981 F.2d 1345 (1st Cir. 1992) .................................................................................................. 18

*N.E. Cord Blood Bank, Inc. v. Alpha Cord, Inc.*,
  No. 03-11662-GAO, 2004 WL 222357 (D. Mass. Jan. 21, 2004).................................... 13, 14

*OsComp Sys., Inc. v. Bakken Exp., LLC*,
  930 F. Supp. 2d 261 (D. Mass. 2013) ...................................................................................... 13

*Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*,
  196 F. Supp. 3d 123 (D. Mass. 2016) ...................................................................................... 5, 6

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)................................................................................................................... 18

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) ......................................................................... 7, 16, 17

*Sustainable Low Maint. Grass, LLC v. Cutting Edge Solutions, LLC*,
  No. 14-CV-11894-IT, 2014 WL 4656627 (D. Mass. Sep. 15, 2014) ...................................... 11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .................................................................................................................... 8

*Veryfine Prods., Inc. v. PHLO Corp.*,
  124 F. Supp. 2d 16 (D. Mass. 2000) ....................................................................................... 2, 9

## **STATUTES**

15 U.S.C. § 1064 ......................................................................................................................... 14

15 U.S.C. § 1119 ......................................................................................................................... 14

28 U.S.C. § 1404......................................................................................................................passim

28 U.S.C. § 1631 ........................................................................................................................... 5

28 U.S.C. § 2201 ......................................................................................................................... 18

## **RULES**

Federal Rule of Evidence 201 ....................................................................................................... 6

## I.      INTRODUCTION

Wedge Water LLC, D/B/A Wave Soda ("Wave") is an innovative start-up based in San Marcos, California, that pioneered a new better-for-you soda by combining sparkling water, fruit juice, and a small amount of caffeine into healthier and tastier soda alternative. Wave owns the NEW WAVE® trademark and related common law rights. It defends its rights against others in the increasingly competitive better-for-you soda market.

Wave recently discovered that Ocean Spray Cranberries, Inc. ("Ocean Spray"), one of the largest beverage companies in the world, is selling and marketing a copycat product called Ocean Spray "WAVE." Wave contacted Ocean Spray and asked that it cease and desist from using "WAVE" to market its products. Wave invited settlement discussions with Ocean Spray but noted it would file suit "[u]nless the parties can reach a mutually satisfactory resolution[.]"

Ocean Spray's counsel responded, stating that it "has no interest in litigating this matter," but "should [Wave] commence litigation, our client would be forced to counterclaim[.]" Two days later, without waiting for Wave to respond or confirm receipt of Ocean Spray's letter, Ocean Spray hastily filed this declaratory judgment action.  A day later, Wave – the true plaintiff in this matter – filed suit in the Southern District of California for damages and injunctive relief.

This case and the California case are mirror images – both require a determination of Wave's claims that Ocean Spray is infringing Wave's trademark rights by marketing and selling "Ocean Spray WAVE" in nearly identical packaging. Ocean Spray's declaratory judgment complaint, filed after misleading Wave, is a quintessential race to courthouse and undermines the policy interest in encouraging pre-suit settlement negotiations. Under the settled law of this Circuit, this action should be transferred to Wave's chosen forum.

*First*, under nearly identical circumstances, this Court and others in this District and Circuit have found that forum-shopping and deception of the kind Ocean Spray engaged in here

warrants transfer of this action to the true plaintiff's chosen forum. *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.).[1]

*Second*, this case should be transferred because California is more convenient for the parties and witnesses, because the harm to Wave took place there, and because the majority of relevant evidence is located there. California is convenient for Ocean Spray too. Ocean Spray regularly transacts business and litigates in California. Massachusetts, on the other hand, has little connection to this suit. Wave has no employees or operations there. As the true plaintiff and aggrieved party, Wave's choice of venue should be given greater weight.

*Third*, the public-interest factors, particularly the imperative not to further congest federal courts with identical proceedings or reward procedural gamesmanship, weigh in favor of transfer to California, where this dispute can be adjudicated comprehensively.

---

[1] *See also Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. 12-10551-NMG, 2012 WL 12941889, at *6 (D. Mass. Sept. 28, 2012) ("Special circumstances rebut the first-filed presumption where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day. ...... In such situations, the plaintiff's first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum and deference to a later-filed action may be appropriate.") (internal quotation marks and alterations omitted), *report and recommendation* adopted, 2012 WL 13059891 (D. Mass. Nov. 21, 2012); *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000) ("This Court is persuaded that in patent infringement cases, where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and that the "first-filed rule" will not be dispositive."); *Veryfine Prods., Inc. v. PHLO Corp.*, 124 F. Supp. 2d 16, 23 (D. Mass. 2000) ("When ...... *there is no false implication that a party will refrain from litigation during those negotiations*, the first-filed presumption may remain intact.") (emphasis added); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 399 (D. Mass. 1996) (Wolf, J.) (declining to transfer because plaintiff did not act "for the purpose of lulling defendants into delaying suit so [it] could sue first").

## II.     BACKGROUND

Wave is a rapidly-growing beverage company based in San Marcos, California. Declaration of Andrew Levine ("Levine Decl."), Ex. 1 ("Wave Compl.") ¶ 17. It was founded in 2016 by Nat Noone, a beverage industry veteran and self-described soda fanatic who wanted to offer consumers a healthier, tastier alternative to sugary drinks and bland seltzers. *Id.* Wave pioneered an entirely new product category by launching Wave Soda, which combines simple ingredients – sparkling water, fruit juice, and a small amount of caffeine – into a soda alternative that is healthier and tastier than traditional sugary sodas and sparkling waters. *Id.* ¶ 19.  Wave has since been heralded as a brand on the rise by the news media and industry press, including being named one of the "Best Healthy Sodas" by *Shape* Magazine and winning *Beverage Digest's* "Best Packaging and Label Design" award in 2020. *Id.* ¶ 21.

Wave has continuously used its federally-registered trademark NEW WAVE® in International Class 32 (U.S. Reg. No. 5571632) and related common law trademark and other trade dress and intellectual property rights related to Wave Soda to distinguish itself from the competition. *Id.* at ¶¶ 24, 26. Wave diligently developed and protects the Wave Soda brand and NEW WAVE® and WAVE trademarks, along with related intellectual property related to Wave Soda. *Id.* ¶ 23.

### A.     Wave Discovers Ocean Spray's Infringement, Sends a Cease-and-Desist Letter, and Engages in Good-Faith Settlement Negotiations

Wave recently learned that Ocean Spray has launched for sale and begun marketing a confusingly similar line of sparkling beverage products called "Ocean Spray WAVE" *Id.* ¶ 32. On April 9, 2021, Wave sent a cease-and-desist letter to Ocean Spray's President, CEO and General Counsel, warning that Ocean Spray was infringing Wave's trademark and trade dress rights. Levine Decl., Ex. 2, at 1.  Wave requested that Ocean Spray agree to modify its packaging

for the infringing products to remove the prominent "WAVE" mark from its packaging and marketing materials. *Id.* at 5. Wave advised Ocean Spray that while it hoped for an "amicable resolution to this dispute" if the parties could not "reach a mutually satisfactory resolution, Wave intends to file suit to remedy Ocean Spray's infringement in the United States District Court for the Southern District of California."  *Id.* at 5.

On April 20, 2021, Ocean Spray's counsel responded, acknowledged Wave's intention to sue in the Southern District of California and expressly disclaimed any interest in litigation:

> You [*sic*] letter also implies that you intend to seek a court order absent prompt and total capitulation by Ocean Spray. ......***While Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced to counterclaim, at the very least, to cancel your client's registration based on our client's prior rights.***

*Id.,* Ex. 3 at 4 (emphasis added). On April 21, Ocean Spray asked Wave to confirm receipt of its letter. *Id.*, Ex. 4. It did not wait for a response before racing to file action.

### B.    Ocean Spray Aborts Settlement Discussions by Hastily Filing a Complaint; Wave Sues in California

On the morning of April 22, 2021, less than 48 hours after it misled Wave by representing that Ocean Spray had "no interest in litigating this matter" and would not file suit unless Wave "commence[ed] litigation[,] Ocean Spray filed this declaratory judgment action seeking to invalidate Wave's trademark rights. Dkt. 1. Later than morning at 9 a.m. Pacific Time, Ocean Spray's counsel emailed Wave's counsel the complaint. Levine Decl., Ex. 5, at 1.

Wave's counsel responded that day:

> I am surprised to receive the email below and notice of Ocean Spray's anticipatory filing in response to our April 9, 2021 letter, given your response, which stated "Ocean Spray has no interest in litigating this matter" unless Wave Soda were to "commence litigation." The filing of a strike suit to front run Wave Soda's complaint is improper. *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.). Putting aside the impropriety of the filing, which was clearly designed to bully a smaller competitor and burden it with motion practice in Massachusetts, we obviously disagree with the allegations in

the complaint, many of which are demonstrably false, and will respond accordingly.

*Id.*, Ex. 6.

Wave filed its complaint against Ocean Spray the next day, April 23, 2021, in the Southern District of California, just as it had indicated it would in its April 9, 2021 letter. Wave seeks damages, injunctive relief and other relief for Ocean Spray's Trademark Infringement, False Designation of Origin, Trade Dress Infringement, Trademark Infringement under California Common Law, Unfair Competition under the California Business and Professional Code, Cancellation of Registration, and for Declaratory Judgment of Infringement, seeking damages, injunctive and other relief. *Id.*, Ex. 1.

### C.   Wave and Ocean Spray Operate Extensively in California; Wave Has Virtually No Ties to Massachusetts

Wave is a start-up with fewer than ten employees, all of whom reside and work in California. It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. Declaration of Nat Noone ("Noone Decl.") ¶ 7. Wave and its co-founders and employees have no connections to Massachusetts.[2] *Id.* ¶¶ 3-7.  Wave has no employees or operations in Massachusetts aside from a tiny percentage of Wave's overall sales in the state. *Id.* ¶ 5. It has never sourced ingredients from nor manufactured its product there. *Id.*

---

[2] "28 U.S.C. § 1631 allows transfer when a court lacks personal jurisdiction. A court can *sua sponte* order transfer under 28 U.S.C. § 1631, which states, in relevant part, where the 'court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought.'" *Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*, 196 F. Supp. 3d 123, 133 (D. Mass. 2016) (quoting 28 U.S.C. § 1631) (internal citations omitted).  Although transfer is warranted based on Ocean Spray's violating public policy, Wave requests transfer pursuant to Section 1631 in the alternative.

¶ 6.  Wave's first sale in Massachusetts occurred in November 2020. *Id.* ¶ 5.  Wave's sales in

Massachusetts account for less than 0.3% of its total sales. *Id.*

By contrast, Wave's operations and the vast majority of Wave's sales occur in California.

*Id.* ¶ 4.  Wave is headquartered in and has its sole office in San Marcos, California. *Id.* ¶ 3.  All

of Wave's employees live and work in California (all but one in San Diego County). *Id.* All

documents and records related to Wave's trademarks and business are kept in San Diego County.

*Id.* Wave's sales to California represent more than 30% of its total sales. *Id.* ¶ 4. And Wave

suffered and continues to suffer harm from Ocean Spray's infringement in California.[3]

Ocean Spray, on the other hand, is a billion-dollar beverage company with a significant

presence in California, Wave's chosen forum. It has affirmatively established and maintained

contacts with the State of California and is registered with the California Secretary of State to do

business in California as entity number C2082649.[4] Levine Decl., Ex. 7. Ocean Spray sells its

products, including the infringing products that are at the heart of this dispute, throughout

California. And it routinely litigates matters in California District Courts. *See, e.g.*, *Hilsley v.*

*Ocean Spray Cranberries, Inc.*, No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal.

Nov. 29, 2018) (certifying class of California consumers who purchased any of 12 specified

Ocean Spray juices in food labeling lawsuit); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-

---

[3] *Edvisors Network, Inc. v. Educational Advisors, Inc.*, 755 F.Supp.2d 272, 284 (D. Mass. 2010) ("Courts in this jurisdiction have determined that trademark infringement, like libel, involves conduct that is purposefully directed at the state in which the trademark owner is located.").

[4] Wave respectfully requests that the Court take judicial notice of the fact of Ocean Spray's registration with the California Secretary of State. pursuant to Federal Rule of Evidence 201.

CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013); *Pom Wonderful LLC v. Ocean*

*Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D. Cal. 2009).

### D.     Wave Requested that Ocean Spray Agree to Transfer this Action Prior to Filing this Motion; Spray Refused

On the same day Ocean Spray filed this action, Wave put Ocean Spray on notice that this

action was an improper forum-shopping exercise clearly designed to bully a smaller competitor

and burden it with motion practice in Massachusetts. Levine Decl., Ex. 6. On May 2, 2021,

Wave again requested that Ocean Spray dismiss this action and refile its complaint as a counter-

complaint in the Southern District of California.  *Id.*, Ex. 8, at 1.  Ocean Spray again refused.

Rather than litigate this dispute on merits, Ocean Spray appears intent to use its size and

resources to delay adjudication of its infringement, including by seeking a stay of discovery in

California pending this Court's determination of Wave's motion to transfer. *Id.* at 1-2. Ocean

Spray's conduct has already caused consumer confusion and irreparable harm to Wave's brand

and business reputation. A prompt adjudication on the instant motion is therefore necessary to

prevent further irreparable harm to Wave, while Ocean Spray expands its marketing and sales of

the infringing Ocean Spray WAVE product.

## III.    ARGUMENT

Wave is the true plaintiff in this case, and it deserves to have its choice of venue in

California respected.  Under blackletter law of this Circuit, Wave should not be hauled into court

in Massachusetts because Ocean Spray raced to the courthouse after misrepresenting otherwise

to Wave. As this Court decided in *Davox Corp. v. Digital Systems International, Inc.*, 846 F.

Supp. 144, 148 (D. Mass. 1993), an alleged infringer "should not be permitted to take advantage

of the fact that [an aggrieved party] responsibly deferred filing potentially protracted and

expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [the infringer's] response to its letters."

Furthermore, the convenience of the parties and public-interest considerations weigh strongly in favor of transfer. Wave is a California based start-up with no offices, employees, or significant operations in Massachusetts. All of its employees are based on California, where the infringement occurred, the injury is primarily suffered and much of the evidence exists. It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. California is *also* convenient for Ocean Spray because it has affirmatively established and maintained contacts with the State of California, is registered to do business in California, sells its products in California and routinely litigates matters in California.

This Court should exercise its power under 28 U.S.C. § 1404(a) to "transfer [this] civil action to any other district or division where it might have been brought" when it is for "the convenience of parties and witnesses, [and] in the interest of justice." Transfer will promote the important policy of "prevent[ing] the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotations omitted).

Transferring the case will respect Wave's choice of forum as the true plaintiff in this matter, promote good faith settlement efforts, disincentivize Ocean Spray's procedural gamesmanship, and facilitate the efficient and comprehensive adjudication of this dispute.

### A.     The First Filed Rule Must be Disregarded Where, As Here, There are Special Circumstances

"Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is *generally preferred* in a choice-of-venue decision." *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.

1987) (emphasis added). But the first-filed rule does not operate formalistically, particularly in circumstances where a putative defendant rushes to deprive the natural plaintiff of its chosen venue. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977).

There are at least two well-established exceptions in this Circuit that compel courts to disregard the "first-filed rule" and send cases to the venue where they belong: (1) where there are "special circumstances" justifying the cases being heard in the second forum, such as where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a preemptive race to the courthouse; and (2) where the balance of convenience substantially favors the second-filed action. *Biolitec, Inc v. Angiodynamics, Inc.*, 581 F. Supp. 2d 152, 158 (D. Mass. 2008). Ocean Spray's complaint raises both exceptions.

### B. Because Public Policy Promotes Extrajudicial Dispute Resolution, the Court Should Not Condone Ocean Spray Misleading Wave in Its Sprint to The Courthouse

Complaints filed shortly after a party communicates its intention to sue are indicative of a race to the courthouse, which has a chilling effect on constructive settlement discussions. Moreover, claims for declaratory judgments (rather than for damages or injunctions) indicate an attempt at "procedural fencing" to secure a more favorable forum and deprive the injured party of its preference. Thus, "special circumstances" to deviate from the first-filed rule include situations where the true plaintiff responsibly deferred filing potentially protracted and expensive litigation because it was misled into believing it would not be prejudiced by the other side's response to its cease-and-desist letter, *Davox*, 846 F. Supp. at 148-49; where a misrepresentation was intentionally made with the purpose of lulling the true plaintiff into delaying suit so the other side could sue first, *see Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 399 (D. Mass. 1996) (Wolf, J.); or where there was a false implication by a party that it will refrain from filing litigation. *See Veryfine Prods., Inc. v. PHLO Corp.*, 124 F. Supp. 2d 16, 23 (D. Mass. 2000)

("*When . . . there is no false implication that a party will refrain from litigation during those negotiations*, the first-filed presumption may remain intact.") (emphasis added). To hold otherwise would be to punish a party for focusing on settlement negotiation, which would violate the well-established public policy encouraging out-of-court settlement.

Ocean Spray's complaint is textbook forum shopping that raises both exceptions set forth in the law of this Circuit. Rewarding Ocean Spray's dash to the courthouse by allowing it to usurp the natural plaintiff's choice of forum for a less convenient forum would undermine good faith settlement negotiations and encourage procedural gamesmanship. For that reason alone, this case should be transferred to the Southern District of California.

### 1.    Ocean Spray Misled Wave Regarding Its Intentions and Then Raced to the Courthouse

Ocean Spray filed suit less than two weeks after Wave provided Ocean Spray with notice of its infringement and Wave's intention to sue should the parties not reach an amicable settlement, and *just two days after Ocean Spray misled Wave that it did not intend to sue*. Ocean Spray's rushed and hastily drafted complaint is quintessential pre-emptive strike warranting deviation from the first-filed rule.

> Special circumstances rebut the first-filed presumption where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day. ....... In such situations, the plaintiff's first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum and deference to a later-filed action may be appropriate.

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. CV 12-10551-NMG, 2012 WL 12941889, at *6 (D. Mass. Sept. 28, 2012) (internal quotation marks and

alterations omitted), *report and recommendation* adopted, 2012 WL 13059891 (D. Mass. Nov. 21, 2012).[5]

Here, shortly after Wave noticed Ocean Spray's infringement, it sent a demand letter. Levine Decl., Ex. 2, at 1-3. Wave indicated it was open to a commercial resolution but advised that, if the parties were unable to reach a resolution, Wave was prepared to file suit in the Southern District of California. *Id.* at 3. This is exactly what "the sound policy of promoting extrajudicial dispute resolution" calls for. *Davox*, 846 F. Supp. at 148.

Ocean Spray took advantage of that policy. In order to delay Wave from taking legal action, Ocean Spray intentionally misrepresented that it would not file, so that Ocean Spray could hastily prepare its Complaint and rush to the court house without giving Wave any notice. Levine Decl., Ex. 3, at 4. This is the precise misconduct that policy is designed to discourage and punish. *Sustainable Low Maint. Grass, LLC v. Cutting Edge Solutions, LLC*, No. 14-CV-11894-IT, 2014 WL 4656627, at *5 (D. Mass. Sep. 15, 2014) ("In light of these facts, maintaining the instant action would cut against promoting settlement negotiations and avoiding races to the courthouse. Even when construing all the facts in the light most favorable to [plaintiff], it would be inequitable to reward [plaintiff] by maintaining this action in its preferred forum").

---

[5] *See also Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000). ("where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and … the 'first-filed rule" will not be dispositive.'").

In *Davox* – again, a case on all fours with the present factual circumstances – a patent owner sent two letters to infringer alleging infringement and inviting negotiations to avert litigation. 846 F. Supp. at 146. The infringer responded with a letter denying claims, saying its outside patent counsel would respond regarding discussions. *Id.* Instead of responding, the infringer filed a complaint for declaratory judgment one month later in the District of Massachusetts. *Id.* The next day, the patent owner filed suit in the Western District of Washington. *Id.* at 147. This Court declined to exercise jurisdiction over the complaint and transferred the entire case, including the infringer's own infringement claims, to the Western District of Washington, holding:

> This court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources ....... Here, [Plaintiff] should not be permitted to take advantage of the fact that [Defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [Plaintiff]'s responses to its letters.

*Id.* at 148. This Court found it significant that, as here, the original cease-and-desist letter expressly held out the possibility of negotiations (*compare id. with* Levine Decl., Ex. 2, at 5), and the infringer's response misled the patent owner into believing discussions were ongoing. *Compare Davox*, 846 F. Supp. 144 n.2 *with* Levine Decl., Ex. 3, at 4.

The facts here are even more egregious.  In response to a letter in which Wave indicated that if the parties could not reach an amicable resolution, it would file a complaint in the Southern District of California, Ocean Spray responded it had no interest in litigation unless Wave filed first. Levine Decl., Ex. 2, at 5; Ex. 3, at 4. Less than 48 hours later, without notice, Ocean Spray filed the declaratory judgment complaint in this action. *Id.*, Ex. 4. This is a quintessential example of misleading the true plaintiff to effectuate forum-shopping.

Rewarding Ocean Spray's misrepresentation by allowing it to win a preemptive race to the courthouse and to usurp the natural plaintiff's choice of forum would undermine good faith settlement negotiations and encourage procedural gamesmanship. *Davox*, 846 F. Supp. at 148-49. For that reason alone, this case should be transferred to the Southern District of California.

> **2.      Ocean Spray's Request for Declaratory Relief Only Makes Plain that this Action Is a Preemptive Strike**

Claims for declaratory judgment (rather than for damages or injunctions) can indicate an attempt at "procedural fencing" to secure a more favorable forum and deprive the injured party of its preference. *Braintree Labs., Inc. v. Bedrock Logistics, LLC*, No. 16-11936-IT, 2016 WL 7173755, at *2 (D. Mass. Dec. 8, 2016) ("[First-filed plaintiff] thus appears implicated in the 'procedural fencing' that militates against application of the 'first-filed rule.' The rule is not intended to provide defendants first threatened in one district refuge in another."); *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 274 (D. Mass. 2013) (first-filed rule should not apply "where a party engages in procedural fencing in order to preempt the other party's potential lawsuit against it") (internal quotations and alterations omitted). Thus, courts in this District have recognized that declaratory actions may be more indicative of a preemptive strike than a legitimate pursuit of justice. *E.g.*, *N.E. Cord Blood Bank, Inc. v. Alpha Cord, Inc.*, No. 03-11662-GAO, 2004 WL 222357, at *3 (D. Mass. Jan. 21, 2004) (giving priority to second-filed action because first-filed action primarily sought declaratory judgment). Moreover, the pleading of non-declaratory claims in addition to a declaratory claim does not negate this exception. *See id.*; *see also Hilliard v. Credit Suisse First Bos. LLC*, No. 8:06CV285, 2006 WL 2239014, at *4 (D. Neb. Aug. 3, 2006) (interpreting *Alpha Cord* and noting: "To hold that the pleading of non-declaratory claims, in addition to a declaratory claim, automatically prevents the . . . exception to the first-filed rule would enable parties to circumvent a natural plaintiff's choice of venue merely

by attaching closely-related non-declaratory claims to a primary declaratory claim. Such a rigid interpretation would not be in the interests of justice.").

Here, Ocean Spray's self-styled "DJ Complaint" includes only three claims, one for declaratory judgment and two closely-related counts for cancellation under 15 U.S.C. §§ 1064 and 1119 – which just two days earlier, Ocean Spray had threatened it "would be forced to [bring as] counterclaim[s]" should Wave "commence litigation." (Levine Decl., Ex. 1, at 3.) Ocean Spray makes no showing that a declaratory judgment would serve the traditional purposes of the Declaratory Judgment Act; that is, to minimize the accrual of damages or afford one threatened with liability an early adjudication.  *See Comfort v. Lynn Sch. Comm.*, 150 F. Supp. 2d 285, 302 n.39 (D. Mass. 2001). Ocean Spray fails to identify any loss it has suffered and provides no evidence that Wave intended to delay legal action while damages unnecessarily accrued.  In fact, Ocean Spray does not even allege that *any* damages have accrued at all. First Circuit courts dismiss or transfer declaratory judgment claims like this as a matter of course where the claims were brought as a preemptive strike and not for a legitimate purpose under the Declaratory Judgment Act.  *See, e.g.*, *Alpha Cord*, 2004 WL 222357 at *3.

## C.   The Balance of Convenience and Public Interest Substantially Favor Transfer to California

When evaluating a motion to transfer under 28 U.S.C. § 1404(a), courts in this District also consider convenience, fairness, and the interests of justice on a case-by-case basis, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of witnesses and location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the public interest at stake. *Kleinerman*, 107 F. Supp. 2d at 125; *Biolitec*, 581 F. Supp. 2d at 158 (noting that balance of convenience justifies cases being heard in second forum).

14

This decision is firmly within the Court's discretion. *E.g.*, *Biogen*, 954 F. Supp. at 398 (quoting *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) ("Exceptions [to the first-filed rule] are not rare, and are made when justice or expediency requires, as in any issue of choice of forum.").  The court's "discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interest are best served." *Id.* "Factors to be considered in exercising this discretion include judicial and litigant economy, the just and effective disposition of disputes, the possible absence of jurisdiction over all necessary and desirable parties, as well as a balancing of conveniences that may favor the second forum." *Dupont Pharmaceuticals Co. v. Sonus Pharms., Inc.*, 122 F. Supp. 2d 230, 231 (D. Mass. 2000) (citing *id.*).

Here, an objective assessment of the relative convenience of the parties, witnesses, and third-parties, as well as the location of the bulk of the evidence and the location where the harm against Wave occurred leads to only one conclusion: this case should be adjudicated in California. If Ocean Spray wishes to enjoy the literal fruits of doing business in California, it should be subject to California jurisdiction as well.

### 1.   Ocean Spray's Choice of Forum Is Not Afforded Much, If Any, Weight Because It Misled Wave and Sprinted to the Courthouse

In direct response to Wave's settlement overtures and statement that it would file suit in California should the parties not reach an amicable resolution, Ocean Spray misled Wave that it had no interest in litigating, only to then rush to file this action across the country. Given such gamesmanship and blatant forum-shopping, "the usual weight given to the plaintiff's choice of forum is not justified. Rather, to give it such weight would abet a form of forum shopping that should not be encouraged." *Johnson v. N.Y. Life Ins. Co.*, No. 12-cv-11026, 2013 WL 1003432, at *3 (D. Mass. 2013); *see also Dress v. Capital One Bank (USA)*, 368 F. Supp. 3d 178, 184 (D.

15

Mass. 2019) ("Where there is such suspicion of forum shopping, the plaintiff's choice of forum does not have the same weight. This Court can consider the factual circumstances basing the allegations of forum-shopping in determining the weight to give Plaintiff's choice of forum without ruling that Plaintiff did in fact forum shop.") (citing *Flood v. Carlson Restaurants, Inc.*, 94 F.Supp.3d 572, 576 (S.D.N.Y. 2015) ("the more it appears the decision is motivated by forum shopping reasons, the less deference will be accorded to it")). In these circumstances, the true plaintiff's forum should be given more weight.

### 2.     The Parties Are in California

Wave is start-up with fewer than ten employees and little support staff, all of whom reside and work in California. It would be tremendously burdensome and inconvenient for Wave to be forced to litigate in Massachusetts. Noone Decl. ¶ 7.  Ocean Spray is in California as well. It has affirmatively established and maintained contacts with the State of California and is registered with the California Secretary of State to do business in California. Levine Decl., Ex. 6. And Ocean Spray routinely litigates matters in California District Courts. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-02335-GPC-MDD, 2018 WL 6245894 (S.D. Cal. Nov. 29, 2018) (certifying class of California consumers who purchased any of 12 specified Ocean Spray juices in food labeling lawsuit); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D. Cal. 2009).

On balance, California is a more convenient forum for the parties, whereas Massachusetts is convenient only for Ocean Spray. More importantly, Massachusetts is not convenient for the witnesses whose testimony will be important to determining liability in this case.

### 3. Key Witnesses and Documents Are in California

Since its founding, Wave has been headquartered in and has its sole office in San Marcos. Noone Decl. ¶ 3. All of Wave's employees, who would be key witnesses regarding Wave's launch, growth, technology, branding, and trademark, live and work in California (all but one in San Diego County). *Id.* All documents and records related to Wave's trademarks and business are kept in San Diego County. *Id.* Wave has no employees or operations in Massachusetts aside from a tiny fraction of its sales—less than 0.3% of total sales. *Id.* ¶ 5. Wave has never sourced ingredients from nor manufactured its product from Massachusetts. *Id.* ¶ 6.

Ocean Spray sells its products, including the infringing products that are at the heart of this dispute, throughout California. When representatives from these California retailers are called as witnesses, they would be beyond the subpoena power of this Court but could be compelled to testify in the California action.

Generally, it is not the convenience of the parties, but rather the convenience of the witnesses that is the most important § 1404(a) factor in considering a motion to transfer venue. *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) (collecting cases). Here, all of Wave's employees are located in California, not Massachusetts, and because the employees involved in the origination of Wave's trademark and trade dress are located in California, a California forum is more convenient to most of the expected witnesses in this case.

### 4. The Center of Gravity for This Case is Business Activity in the Southern District of California

The harm suffered by Wave took place in California and the center of gravity for this case is business activity in the Southern District of California. "Courts in this jurisdiction have determined that trademark infringement, like libel, involves conduct that is purposefully directed at the state in which the trademark owner is located." *Edvisors*, 755 F.Supp.2d at 284.

17

### 5.      California Law Must Be Applied First in This Trademark Dispute

The choice of law analysis also militates transferring this case to California. In this case,

before the Court can determine the contours of the parties' rights under federal law, it must first

apply California law to determine the contours of the trademark rights that Wave holds under

state law. *Dorpan v. Hotel Meliá, Inc.*, 728 F.3d 55, 63 (1st Cir. 2013) (noting that extent of

preexisting common law trademark is determined by reference to state law).

### 6.      The Public Interest Also Favors the California Forum

Under 28 U.S.C. § 1404(a), the Court must also consider public-interest factors

promoting "the interest of justice," such as administrative difficulties flowing from court

congestion, the local interest in having localized controversies decided at home, and the interest

in having the trial of a diversity case in a forum that is at home with the law.  *See DePianti v.*

*Jan-Pro Franchising Int'l, Inc.*, No. 08-10663-MLW, 2016 WL 4771056, at *4 (D. Mass. Sep.

13, 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).[6]

_____

Congested courts should not be burdened by adjudicating two identical actions in

Massachusetts and California, particularly when the California action is the better venue to

comprehensively address the parties' competing claims.  *See Mercier v. Sheraton Int'l, Inc.*, 981

F.2d 1345, 1357 (1st Cir. 1992).  And per the most recent Civil Statistical Tables for the Federal

[6] "Aside from the discretion available to depart from the first-filed rule, this Court also has a broad
grant of discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), in determining whether
to exercise jurisdiction over the plaintiffs' action." *Dupont*, 122 F. Supp.2d at 231

Judiciary, the Southern District of California is less congested than the District of Massachusetts.[7]

California is the natural venue for this case. Federal courts – congested even in the best of times – are even more backlogged now given the COVID-19 pandemic. They should not be further burdened by two identical matters in two different courthouses. California is the more appropriate and more efficient choice to adjudicate a case with its center of gravity in California, and thus this matter should be transferred.

## IV.    CONCLUSION

For the foregoing reasons, Wave respectfully requests that the Court grant this Motion to Transfer and send this dispute to the Southern District of California.

---

[7] *Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2020*, at Table C-5, STATISTICAL TABLES FOR THE FEDERAL JUDICIARY (Dec. 31, 2020) (showing 2,074 cases and median time interval of 9.1 months for the District of Massachusetts, and 1,850 cases and 6.2 months, respectively, for the Southern District of California).

Dated:  May 3, 2021

Respectfully Submitted,

**WEDGE WATER, LLC
D/B/A WAVE SODA,**

*By its attorneys*,

/s/ *Alexander T. Hornat*
Keith Toms (BBO# 663369)
Alexander T. Hornat (BBO# 687588)
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Phone: 617-449-6500
ktoms@mccarter.com
ahornat@mccarter.com

Andrew Levine (*pro hac vice pending*)
J. Tobias Rowe (*pro hac vice pending*)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
levine@braunhagey.com
rowe@braunhagey.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 3rd day of May 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

 /s/ *Alexander T. Hornat*
Alexander T. Hornat