**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Ocean Spray Cranberries, Inc.,**     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
|     v.     ) | C.A. No. 1:21-10669-MLW |
|     ) | |
| **Wedge Water, LLC**     ) | |
| **d/b/a/ Wave Soda,**     ) | |
|     ) | |
|     Defendant     ) | |
| _____) | |

**PLAINTIFF OCEAN SPRAY'S OPPOSITION TO**
**DEFENDANT WEDGE WATER'S MOTION TO TRANSFER**

DATED: May 10, 2021

Respectfully submitted,

OCEAN SPRAY CRANBERRIES, INC.
By its Attorneys,

    John R. Snyder
    BBO No. 471480
    Potomac Law Group
    101 Federal Street, Suite 1900
    Boston, MA 02110
    Tel: (617) 285-1790 | Fax: 617-830-9994
    **jsnyder@potomaclaw.com**

    Of Counsel:
    Julia Anne Matheson
    (*Pro hac vice* motion filed)
    Janet F. Satterthwaite
    (*Pro hac vice* motion filed)
    Potomac Law Group
    Suite 700
    1300 Pennsylvania Ave NW
    Washington DC 20004
    **jmatheson@potomaclaw.com**
    **jsatterthwaite@potomaclaw.com**
    Tel: 202-486-1578

# TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................ 1

II.  ARGUMENT ................................................................................................... 4

    A.  Ocean Spray Did Not Mislead Wedge Water into Expecting to Settle or to Avoid Litigation ............................................................................................ 7

    B.  In a Factual Dispute Over Expectations, the Court Should Defer to the First Filer ....................................................................................................... 11

        1.  1.  <u>Venue is More Convenient in Massachusetts</u>

            a.  Plaintiff's Choice of Forum ................................................... 12

            b.  Ocean Spray and its Witnesses are Not in California ............................. 12

            c.  Federal Law, Not State Law, Governs this Matter. ................................. 14

            d.  Wedge Water is Already Disrespecting This Court's Exclusive Prerogative to Rule on Venue. ................................................ 15

III.  CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28 (1st Cir. 2016)............. 5

*Biogen v. Schering*, 954 F. Supp. 391 (D. Mass. 1996)................................................................. 10

*Biolitec, Inc v. Angiodynamics, Inc.*, 581 F. Supp. 2d 152 (D. Mass. 2008) ................................ 7

*Cossart v. United Excel Corp.*, 804 F.3d 13 (1st Cir. 2015)........................................................... 4

*Davox Corp. v. Digital Systems Int'l, Inc.* 846 F. Supp. 144 (D. Mass 1993)................................ 6

*Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55 (1st Cir. 2013) ................................................... 15

*Edvisors Network, Inc. v. Educ. Advisors, Inc.,* 755 F. Supp. 2d 272 (D. Mass. 2010) .............. 14

*Edwards v. Radventures, Inc.*, 164 F.Supp.2d 190 (D. Mass. 2001) ............................................. 5

*Falafel* 2012 WL 12941889 .......................................................................................................... 11

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. CV 12-10551-NMG, 2012 WL 12941889 (D. Mass. Sept. 28, 2012), *report and recommendation adopted,* No. CV 12-10551-NMG, 2012 WL 13059891 (D. Mass. Nov. 21, 2012) .............................................................................................................. 6, 9

*Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12 (D. Mass. 2002) ........................................................................................................................... 10

*Island Oasis Frozen Cocktail Co. v. NUCO USA LLC*, No. CV 11-10104-JCB, 2011 WL 13254079 (D. Mass. June 2, 2011) .............................................................................. 10, 12

*J.J. Reidy & Co. v. Airwater Corp.,* No. CIV. 05-40049-FDS, 2005 WL 3728726 (D. Mass. Sept. 27, 2005)................................................................................................... 6

*Kleinerman v. Luxtron Corp.*, 107 F. Supp 2d 122 (D. Mass 2000)............................................. 10

*Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708 (1st Cir.1996) .......................................... 5, 12

*Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051, 2004 WL 444574 (M.D.N.C. Feb. 25, 2004)....................................................................................................... 6

*Sustainable Low Maint. Grass, LLC v. Cutting Edge Sols., LLC*, No. 14-CV-11894-IT, 2014 WL 4656627 (D. Mass. Sept. 15, 2014) ................................................................... 11

*Veryfine Prod., Inc. v. Phlo Corp.,* 124 F.Supp.2d 16 (D. Mass. 2000)..................... 11, 12, 14, 16

## STATUTES

15 U.S.C. § 1115(a) ......................................................................................................................... 1

28 U.S.C. § 2201............................................................................................................................ 4, 9

Mass. Gen. Laws ch. 223A ............................................................................................................. 5

**OTHER AUTHORITIES**

1 *McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed.)............................................. 2

4 McCarthy on Trademarks and Unfair Competition § 23:16 (5th ed.) ...................................... 16

6 *McCarthy on Trademarks and Unfair Competition* (5th ed.)............................................... 1, 15

Plaintiff Ocean Spray Cranberries, Inc. ("Ocean Spray"), through counsel, hereby opposes Defendant Wedge Water, LLC's Motion to Transfer.  Wedge Water has not shown that an exception to the first-filed rule is warranted, and this case ought, therefore, to remain with this Court.

I.   BACKGROUND

As more fully set forth in the Complaint, Dckt 1, Ocean Spray is major producer of fruit-based beverages, and is the owner of federal Trademark Registration No. 4641901, issued November 18, 2014, for the mark OCEAN SPRAY WAVE for fruit juice and fruit juice drinks, based on a filing date of March 22, 2013 (Dckt 1 Exh 1), as well as the iconic Ocean Spray Wave logo:



In the popular beverage category for sparkling fruit juice with caffeine, Ocean Spray recently launched its own OCEAN SPRAY WAVE product.  On April 9, 2021, Ocean Spray received a cease and desist letter from counsel for Defendant Wedge Water, LLC ("Wedge Water") alleging that the OCEAN SPRAY WAVE product infringed its "NEW WAVE" trademark and trade dress ("The Letter").  Dckt 1 at Exh 2.

The Letter left Ocean Spray puzzled and confused, as it failed to establish any basis for infringement.  First, Ocean Spray's registered and common-law rights in the mark OCEAN SPRAY WAVE long predate Wedge Water's use of and rights in its NEW WAVE mark.[1]

---

[1] A federal registration "'shall be prima facie evidence' of the validity of the registered mark, of its registration, of the registrant's ownership, and of the registrant's exclusive right to use the mark on the goods or services specified in the registration."  6 *McCarthy on Trademarks and Unfair Competition* § 32:134 (5th ed.), *citing* 15 U.S.C. § 1115(a).

Second, The Letter failed to identify the protectable elements of the allegedly infringed trade dress, merely including pictures of the front of both parties' products side by side, an approach insufficient to make out a claim much less demonstrate proof of infringement.[2]  Dckt 1 at Exh 2. The Letter emphasized the importance of a surfer motif to Wedge Water's trade dress, yet Ocean Spray's product contains no surfer motif.[3]  Finally, Ocean Spray was unable to identify any legal entity called Wave Soda, LLC, in whose name The Letter was written.  The Letter also included an ill-formed threat that appeared to allege false advertising. *Id.*

Ocean Spray responded to The Letter on April 20, 2021 (Dckt 1 Exh 3) (the "Response"). In its Response, Ocean Spray pointed out the numerous defects in The Letter's allegations, and declined to accede to The Letter's demands.  It concluded with the following statement:  "while Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced, *at the very least*, to cancel your client's registration based on our client's prior rights." *Id.* (emphasis added).  The words "at the very least" conveyed a warning to Wedge Water that Ocean Spray may take the matter into its own hands—at "the very least" with a counterclaim to cancel that registration, or perhaps with an action for declaratory judgment ("DJ") if Wedge Water did not back off its indefinite, ill-defined, and meritless claims.  (Indeed,

---

[2] "Whatever plaintiff may claim as the combination of elements making up its alleged trade dress in the product or its packaging and presentation, it is not adequate for the plaintiff to solely identify such a combination as 'the trade dress.' Rather, the discrete elements which make up that combination must be separated out and clearly identified in a list. *All courts agree that the elements of the alleged trade dress must be clearly listed and described.* Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement." *1 McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed.) (footnotes omitted; emphasis added).

[3] The surfer motif is central to Wedge Water's branding, to the point that the absence of a surfer motif in Ocean Spray's trade dress makes it impossible to find that Ocean Spray infringed the NEW WAVE SODA trade dress. *See, e.g.,* Wedge Water's own advertising on this point: Declaration of Janet F. Satterthwaite filed herewith ("Satterthwaite Decl.") at ¶ 15.

were Wedge Water correct that the marks OCEAN SPRAY WAVE and NEW WAVE are confusingly similar, Wedge Water would be the infringer, not Ocean Spray.)

Ocean Spray's counsel followed up the next day by fax and email to ensure that Wedge Water's counsel received the Response. Dckt 12 Exh 4. Ocean Spray's prompt, multi-pronged follow-up should have conveyed a sense of urgency and made clear that Ocean Spray had no intention to capitulate, nor would the dispute settle in Wedge Water's favor. Nothing in the Response gave Wedge Water any basis, much less any reasonable basis, to claim that it was misled regarding Ocean Spray's intentions to explore settlement.

Wedge Water thus had every reason to anticipate a DJ suit. After receiving no reaction to its Response and subsequent fax and email follow-up, and seeing that no lawsuit had been filed in California, Ocean Spray filed the Complaint in this Court almost two weeks after receiving The Letter, two days after the expiration of The Letter's response date, and two days after Ocean Spray's forceful Response with follow-up. Wedge Water had plenty of time to file its Complaint first – which was evidently written and ready-to-go, as it was filed the following day.

Ocean Spray, indeed, has no interest in litigating this matter, since The Letter fails to make out any plausible case of infringement. Because The Letter was so defective, yet demanding, Ocean Spray believed the only way to protect itself was to file a DJ action after the expiration of The Letter's response date, in federal court in Massachusetts, where Ocean Spray is based, and where Ocean Spray's evidence and witnesses related to the allegations in The Letter are located.

By seeking prompt declaratory relief, Ocean Spray would not be under an ongoing threat to be dragged, at some uncertain time, into a half-baked, ill-formed lawsuit on the other side of the country. Moreover, by initiating judicial process to resolve the dispute, Ocean Spray sought to stem the disruption and uncertainty Wedge Water is attempting to inflict on Ocean Spray's

production and distribution of its Ocean Spray Wave products, and on its relationships with key customers, including by means of a campaign in social media.[4]

II.   ARGUMENT

Wedge Water does not dispute that Ocean Spray's DJ complaint arises from a case or controversy; that seeking DJ relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201; that this Court has subject-matter jurisdiction, and that the cases in Massachusetts and California are related.  Nor does Wedge Water appear to dispute that it is the exclusive prerogative of this Court, as the venue of the first-filed action, to decide where venue should lie.[5]

The only issue, therefore, is whether this Court should, in its discretion, transfer the matter to California.[6]  As Wedge Water notes, federal courts follow the first-to-file rule, whereby

---

[4] For example, Wedge Water appears to have paid social media influencers accusing Ocean Spray of bullying and infringement.  Satterthwaite Decl. at ¶¶ 3-14.

[5] Although the Court should be aware that, as discussed *infra*, Wedge Water is threatening to move ahead with a preliminary injunction motion in California before this Court has ruled on the proper venue.

[6]  Wedge Water asserts, seemingly as an afterthought, a challenge to the Court's personal jurisdiction over it, invoking 28 U.S.C. § 1631.  Dckt 11 at 5 n.2.  Facts in the public domain, together with facts Wedge Water has conceded, are sufficient to defeat that assertion.  The First Circuit employs a three-part Due Process Clause analysis to determine whether there are sufficient contacts between a defendant and the forum state to exercise specific personal jurisdiction, namely:  "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." *Cossart v. United Excel Corp*., 804 F.3d 13, 20 (1st Cir. 2015).  The third factor, the reasonableness of exercising jurisdiction, is assessed in light of the so-called "Gestalt" factors which include "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc*., 825 F.3d 28, 40 (1st Cir.

the court in which a later related suit is filed will generally defer to the first-filed court.  Dckt 11

at 8.  It is the burden of the moving party to convince the court that the first-filed rule should not

be honored.  *Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 719 (1st Cir.1996) (there is a

"strong presumption in favor of a plaintiff's forum choice, [against which] the defendant must

_____

2016).

Here, Wedge Water admits its product is sold in Massachusetts.  Dckt 11 at 6.  Its website
identifies 15 locations just within ten miles of Boston at which its product can be
purchased.  https://wavesoda.com/pages/find-us.  Further, Wedge Water's website solicits online
orders--including from anyone in Massachusetts--of soda and associated merchandise (tee shirts,
hats, etc.).  Wedge Water has also chosen to sell its product on Amazon and online at Walmart--
again without geographical restriction.  E.g., https://www.amazon.com/s?i=merchant-
items&me=AN6TS2D0YIS15; https://www.walmart.com/ip/Wave-Soda-Politely-Caffeinated-
Healthy-Soda-3-Flavor-Variety-Pack-24-
Count/535178882?wmlspartner=wlpa&selectedSellerId=101021788&&adid=222222222270000
00000&wl0=&wl1=g&wl2=c&wl3=42423897272&wl4=pla-
51320962143&wl5=9002078&wl6=&wl7=&wl8=&wl9=pla&wl10=214086508&wl11=online&
wl12=535178882&veh=sem&gclid=Cj0KCQjwytOEBhD5ARIsANnRjVjo2xL8i5LS31m7qLQ
Ao4XXof1RBqxQ8FckyFZOv0v3fAVAcQbsexUaArjFEALw_wcB&gclsrc=aw.ds,  The Wedge
Water website also solicits people--regardless of location--to be "Wave Influencers" (essentially
marketers/sales pitch-persons).  https://wavesoda.com/pages/influencer-sourcing.   In addition,
the website solicits--again without geographical restriction--requests for Wedge Water to supply
its products to community and charity events. https://wavesoda.com/blogs/blog/can-wave-come-
to-my-community-or-charity-event.  This is more than enough to establish the Court's personal
jurisdiction over Wedge Water.  *See, e.g., Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp.
3d 287, 291-292 (D. Mass 2017)* (finding company transacted business when, *inter alia*, it did
two percent of its business in Massachusetts and employed a field marketing representative in the
state); *Edwards v. Radventures, Inc*., 164 F.Supp.2d 190, 194 (D. Mass. 2001) (finding that
$12,000 in sales to state citizens, a website through which Massachusetts sales were solicited,
and a Massachusetts sales location was sufficient to satisfy the "transacting business" prong of
the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a)).

If the Court has any doubt on that score, the appropriate course would be to permit Ocean Spray
to engage in first-wave discovery concerning the extent to which Wedge Water has availed itself
of the privilege of doing business in this district, *e.g*., as to the number of sales locations and
amount of sales made in Massachusetts, including the number of online orders shipped into
Massachusetts; the number of "influencers" Wedge Water has retained in Massachusetts and its
contacts with those "influencers"; and the amounts of product provided to community and
charity events in Massachusetts.

bear the burden of proving ... that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum").  Wedge Water has not met that burden.

These decisions are highly fact-driven.  Generally, courts look at such factors as:

- whether the demand letter truly invites a settlement discussion (here, it did not-- Dckt 1 Exh 2 at 5);[7]

- whether the recipient waited to file an action until after any stated expiration date for a response to the letter[8]  (here, Ocean Spray waited);

- whether the recipient intentionally misled the sender of the letter to keep them from filing suit, usually by indicating a willingness to settle, and the other party actually relied on such misrepresentation to refrain from filing first (Ocean Spray never offered to discuss settlement or take the matter under review);[9]

- whether the forum chosen for the DJ complaint has a connection to the dispute, such as the filer's home state (Massachusetts is Ocean Spray's home state).[10]

Wedge Water bases its argument on two exceptions to the first-filed rule:

---

[7] *See, e.g., Davox Corp. v. Digital Systems Int'l, Inc*. 846 F. Supp. 144, 148 (D. Mass. 1993) (Wolf, J.)(letter invited settlement negotiations).

[8] *See, e.g., Remington Arms Co. v. Alliant Techsystems, Inc*., No. 1:03CV1051, 2004 WL 444574, at *7 (M.D.N.C. Feb. 25, 2004) ("Remington has engaged in procedural fencing by filing this action just one day before the time period in the cease and desist letter had run.") (cited by *J.J. Reidy & Co. v. Airwater Corp.,* No. CIV. 05-40049-FDS, 2005 WL 3728726, at *8 (D. Mass. Sept. 27, 2005)).

[9] *See, e.g.*, *Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, No. CV 12-10551-NMG, 2012 WL 12941889, at *5 (D. Mass. Sept. 28, 2012), *report and recommendation adopted*, No. CV 12-10551-NMG, 2012 WL 13059891 (D. Mass. Nov. 21, 2012) (Mr. Bukuras responded to a demand letter, stating, "I acknowledge receipt of your correspondence ... which I have forwarded to my attorney, with whom I expect to meet next week," but then filed anticipatory lawsuit).

[10] *J.J. Reidy*, 2005 WL 3728726, at *8 ("Furthermore, plaintiff filed suit in its own home-state forum, not in a jurisdiction with no connection to the dispute.").

(1) where there are "special circumstances" justifying the cases being heard in the second forum, such as where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a preemptive race to the courthouse; and

(2) where the balance of convenience substantially favors the second-filed action. *Biolitec, Inc v. Angiodynamics, Inc.*, 581 F. Supp. 2d 152, 158 (D. Mass. 2008).

Dckt 11 at 9.  But neither exception pertains to the subject case.  Ocean Spray did not mislead Wedge Water nor is there any allegation that Wedge Water actually *relied* to its detriment on Ocean Spray's words.  And critically, where, as here, the allegations relate to whether Ocean Spray copied Wedge Water's branding, the most relevant witnesses are not in California, but at Ocean Spray's headquarters, in Massachusetts.

A.   Ocean Spray Did Not Mislead Wedge Water into Expecting to Settle or to Avoid Litigation.

The Court can read The Letter and the Response for itself (Dckt 1 Exhs 2 and 3), and not be misled by Wedge Water's mischaracterization of what they say.  In an effort to make fake facts fit case law and legal argument in support for its motion, Wedge Water's Memorandum is peppered with an oft-repeated falsehood:  *Wedge Water falsely claims that Ocean Spray communicated to Wedge Water that it was not going to file a lawsuit*.  But, as discussed above, Ocean Spray did not say, nor even imply, that it was not going to file a lawsuit.  To the contrary, Ocean Spray denied the claims in The Letter and threatened "*at the very least*" to counterclaim to cancel Wedge Water's trademark registration.  Ocean Spray's choice of wording – namely, its use of "at the very least" -- implied, if not outright signaled, Ocean Spray's intention to file a DJ action, as did Ocean Spray's efforts at follow-up following sending the Response.  As Wedge Water has conceded in the Complaint it filed in the Southern District of California, the Response contains no inkling that Ocean Spray was suggesting the parties negotiate a resolution.  Dckt 12 Exh 1 at 2 ¶ 6: "Ocean Spray responded that it was not interested in such a resolution."

This fiction that Ocean Spray represented that it would not file a lawsuit reappears continuously throughout Wedge Water's memo, including in Wedge Water's false insertion of the word "unless" -- a word Ocean Spray did not use, and which changes the meaning of what Ocean Spray *actually wrote*.  *See, e.g.*, Dckt 11 at 4 (twice), 10, 11 12.

Ocean Spray's *actual* words (emphasis added):

> *While Ocean Spray has no interest in litigating this matter, should you commence litigation, our client would be forced to counterclaim, <u>at the very least,</u> to cancel your client's registration based on our client's prior rights.*

> In view of the above, we are unable to advise our client to accede to your overreaching demands.

Instances where Wedge Water repeats *false* representations of those words (operative words *not* used by Ocean Spray in bold):

- Ocean Spray] misled Wave by representing that Ocean Spray had "no interest in litigating this matter" and **would not file suit unless** Wave "commence[ed] litigation[,] " (p. 4)

- given your response, which stated "Ocean Spray has no interest in litigating this matter" **unless** Wave Soda were to "commence litigation (p. 4)

- Ocean Spray filed suit less than two weeks after Wave provided Ocean Spray with notice of its infringement and Wave's intention to sue should the parties not reach an amicable settlement, and just two days after Ocean Spray misled Wave that **it did not intend to sue**.  (p. 10)

- Ocean Spray intentionally **misrepresented that it would not file**, so that Ocean Spray could hastily prepare its Complaint and rush to the courthouse without giving Wave any notice.  (p. 11)

- Ocean Spray responded it had no interest in litigation **unless** Wave filed first (p. 12)

Wedge Water's entire legal argument is based on an alleged misrepresentation by Ocean Spray *that never happened*.  Wedge Water relies entirely on cases where the court found that the party seeking a DJ had actively misled the other party into thinking it was investigating the

8

matter, or was willing to discuss settlement, thereby inducing the other side to refrain from filing

suit.  The facts in each of these cases, and the rationale underlying their results, are entirely

distinguishable because Ocean Spray was very clear that it did not intend to settle, that it

emphatically denied all the claims in the letter, and that it would seek to cancel Wave Soda's

registration, at the very least.

As Wedge Water notes (Dckt 11 at 10), the *Falafel Republic* court found that an

exception to the first-filed rule applies when "a party won the race to the courthouse by

misleading his opponent into staying his hand."  Dckt 11 at 10, quoting *Falafel Republic*, 2012

WL 12941889 at *6.  In *Davox,* the recipient of a letter expressing concern that a patent might be

being infringed responded that it would respond by subsequent letter to the concerns, but then

filed a DJ complaint.  The letter in the *Davox* case that triggered the DJ action was

> ominous enough to generate a reasonable apprehension of a lawsuit, but also invited
> Davox to address DSI's concerns and attempt to avoid potentially expensive and time-
> consuming litigation based upon misunderstandings rather than informed, intractable
> disagreements. …   Davox's response to DSI's inquiry could have initiated various
> courses of dealing between the parties that would have fallen short of litigation.

846 F. Supp. at 148.  That stands in sharp contrast to the demand letter from Wedge Water,

which foresaw no settlement short of Ocean Spray's total capitulation; a resolution rejected by

Ocean Spray in the clearest of terms, as Wedge Water has conceded in its Southern District of

California Complaint.

Notably, in *Biogen v. Schering*, 954 F. Supp. 391, 397-99 (D. Mass. 1996), this Court

distinguished *Davox* based upon facts and circumstances similar in material respects to this case,

namely, that Biogen had a reasonable fear of litigation, and did not mislead the other party into a

false sense that settlement could happen.  *See also Island Oasis Frozen Cocktail Co. v. NUCO*

*USA LLC*, No. CV 11-10104-JCB, 2011 WL 13254079, at *3 (D. Mass. June 2, 2011), where

there was no evidence that Island Oasis intentionally misled NUCO to keep it from filing suit in

California or that Island Oasis raced to the courthouse immediately after receiving notice that

NUCO intended to file suit.  Rather, as in the case at bar, Island Oasis waited until after the

deadline set forth in the demand letter to file, and chose for its DJ action its home state, a forum

neither vexatious, oppressive, nor remote and one with clear connection to the litigation.  *Id.  See*

*also Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12, 16-17 (D.

Mass. 2002), in which a motion  to transfer a DJ action was denied because (1) the plaintiff "did

not misrepresent its intention to negotiate"; (2) it did not "'sprint[ ] to the courthouse the same

day'" that it received the cease and desist letter; and (3) there were no ongoing negotiations upon

which the defendant had relied in not filing suit.[11]

Wedge Water also misplaces reliance on *Kleinerman*, wherein the court relied on the fact

that there were good faith settlement negotiations ongoing when the DJ action was filed.

*Kleinerman v. Luxtron Corp.*, 107 F. Supp 2d 122, 124-25 (D. Mass 2000).  Such is not the case

here.  Wedge Water's reliance on *Sustainable* is similarly unsupportable, as the circumstances in

that case were entirely different:

> At no time prior to filing this action did Sustainable inform Cutting Edge that it had been
> troubled by [the correspondence] or that it saw litigation a likely outcome of the
> discussions. Instead, Sustainable allowed Cutting Edge to believe that they were engaged
> in an exchange of information that would resolve the matter to the parties' mutual
> satisfaction without litigation.

*Sustainable Low Maint. Grass, LLC v. Cutting Edge Sols., LLC*, No. 14-CV-11894-IT, 2014 WL

4656627, at *4 (D. Mass. Sept. 15, 2014).

---

[11] Nor is Wedge Soda correct in arguing that pretty much any DJ action is improper (Dckt 11 at
13); otherwise, there would be no instance where a DJ would be appropriate.  Ocean Spray will
not waste the Court's time belaboring this point.

      B.     <u>In a Factual Dispute Over Expectations, the Court Should Defer to the First Filer</u>

If there is a factual dispute about whether the party in Wedge Water's position should have been surprised to find itself the object of a lawsuit after threatening to sue, where there were no representations that litigation should be stayed for negotiations, the court will defer to the first-filed rule. *Veryfine Prod., Inc. v. Phlo Corp.,* 124 F.Supp.2d 16, 23–24 (D. Mass. 2000). Particularly where, as here, Ocean Spray's Response and subsequent follow-ups should have put Wedge Water on notice that Ocean Spray might well file a DJ action in response to its preposterous Letter, the same result should obtain.[12]

Ocean Spray offered no representation or conduct on which Wedge Water could reasonably have relied to its detriment.  Wedge Water may be sputtering mad that it did not take steps to avoid the filing of this action, but it cannot be permitted to twist Ocean Spray's words to shift the blame.

      2.    <u>Venue is More Convenient in Massachusetts</u>

As Wedge Water notes (Dckt 11 at 14), the factors for the Court to weigh in exercising its discretion in deciding a motion to transfer are:  (i) plaintiff's choice of forum; (ii) convenience of the parties; (iii) convenience of the witnesses and location of documents; (iv) any connection between the forum and the issues, the law to be applied, and the public interest.  All favor retention of the case by this Court.

---

[12] Notably, Wedge Water does not allege that it *relied* on Ocean Spray's response to delay filing its own suit.  *See, e.g*., *Falafel*, 2012 WL 12941889, at *6 ("Tarazi *relied* on Mr. Bukuras's representations that a response was forthcoming, but was instead ambushed with a lawsuit") (emphasis added).

a.   Plaintiff's Choice of Forum

Wedge Water bases its argument on the falsehood that it was misled by Ocean Spray.

The default position is that Ocean Spray's choice of forum should be honored, particularly since

this case is connected to Massachusetts -- Ocean Spray's home state--and not California. "There

is a 'strong presumption in favor of a plaintiff's forum choice, [against which] the defendant

must bear the burden of proving ... that considerations of convenience and judicial efficiency

strongly favor litigating the claim in the alternative forum.'" *Veryfine*, 124 F.Supp.2d at 21,

quoting *Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 719 (1st Cir.1996).  Moreover, it is

neither vexatious nor oppressive for a litigant to file a DJ action in its home state. *Island Oasis*,

2011 WL 13254079, at *3.

b.   Ocean Spray and its Witnesses are Not in California

Whether there is or is not personal jurisdiction over Ocean Spray in California is not a

reason to find that venue in this case lies only in California.  The Letter accuses Ocean Spray of

deliberately copying Wedge Water's trademarks and trade dress.  It is, therefore, the location of

*Ocean Spray's* witnesses and documents, not Wedge Water's, that are the most important.

Wedge Water will no doubt seek to take discovery as to how Ocean Spray developed its

branding, and whether it was influenced by Wedge Water's product.  Regardless of where venue

lies, those documents are located, and those witnesses will need to be deposed, in Massachusetts.

Should Ocean Spray need to take discovery of Wedge Water, the same will presumably take

place in California.

Wedge Water's Southern District of California Complaint names "Does 1 through

25."  Dckt 12 Exh 1.  These as yet unidentified defendants allegedly "were involved in the

design, implementation, approval, and furtherance of the conduct complained of" in that

Complaint, "or received benefits from those transactions."  *Id.* at 3, ¶ 11.  The location of these

12

putative defendants is not stated, nor is there any indication as to whether the California court has personal jurisdiction over them.  See *id.* at 3-4, ¶¶ 14, 15 (regarding personal jurisdiction). These defendants are not mentioned in Wedge Water's supporting Memorandum.  What if the Court were to transfer this case to California and it then transpired that some or all of the 25 heretofore undisclosed defendants are in Massachusetts?  If the California court does not have personal jurisdiction over any of them, it would seem a separate action in a court that does have jurisdiction (such as the District of Massachusetts?) would then need to be commenced.  The judicial economy goal driving venue selection would then have been defeated.

In a convenient about-turn from the braggadocio of its original demand letter, Wedge Water now takes the position that it is a poor, tiny California startup; that the harm it suffers is all within California; and that it will be harmed if it cannot take testimony of California retailers. These assertions stand in sharp contrast to The Letter's claims that:

> Wave Soda [sic] one of the fastest-growing beverage brands in the United States, *with millions of dollars in annual sales in thousands of stores across the country.* Wave Soda has since been heralded as a brand on the rise by the news media and industry press, ….Wave is poised to continue growing as one of the hottest and most successful beverage start-ups in the country. To help with this growth, Wave Soda has *financial backing from some of the largest players* in the beverage industry, including AB InBev's ZX Ventures.

Dckt 1 Exh 2 at 2 (emphasis added). (AB InBev refers to Anheuser-Busch InBev SA/NV, one of the world's largest drink and brewing companies. ZX Ventures is the venture capital arm of AB InBev.  Satterthwaite Decl. at ¶¶ 16-17.)  Notably, Wedge Water's California Complaint parrots the story from The Letter, claiming that "Wave Soda [is] one of the fastest- growing beverage brands in the United States, *with millions of dollars in annual sales to consumers in all 50 states.*" Dckt 12 Exh 1 at ¶ 20 (emphasis added).

A federal court claim alleging trademark infringement of a nationwide brand by a nationwide brand will not be evaluated based solely upon the impact within the state where the trying court is located, nor would injunctive relief necessarily be limited to one state.  The Court should be skeptical of Wedge Water's claims that the case is only about how trademarks are perceived in California, unless the suddenly poor, tiny, and local Wedge Water cares to concede that it seeks injunctive relief only within California.  Instead, Wedge Water has only shown the "common 'hardships' associated with civil litigation, namely travel, employee absence, document production, etc."  *Veryfine Prod., Inc. v. Phlo Corp.*, 124 F.Supp.2d 16, 26 (D. Mass. 2000).  As in that case, Wedge Water "should not be entitled to deference because its operation is small." *Id.*[13]

c.   Federal Law, Not State Law, Governs this Matter.

While Wedge Soda proclaims that California law is paramount, Dckt 11 at 18, this is a federal, Lanham Act case, with some identical supplemental state-law claims that are unlikely to control or differ materially from the governing federal law to be applied; nor is California law going to differ materially from Massachusetts law.  As the leading trademark treatise notes,

> In almost all cases, state law of trademark infringement will be the same as federal law. State law of trademark infringement and unfair competition is usually the same as (or very similar to) federal infringement law under the Lanham Act. For example, the rule of likelihood of confusion is universally applied as the test for trademark infringement under both federal and state law.

6 *McCarthy on Trademarks and Unfair Competition* § 32:36 (5th ed.) (footnotes omitted).

Accordingly, Wedge Water's argument does not move the needle on venue.[14]

---

[13] Wedge Water incorrectly relies on *Edvisors* to support its venue argument. That case was about whether there was personal jurisdiction over the defendant.  It does not address venue. *Edvisors Network, Inc. v. Educ. Advisors, Inc.,* 755 F.Supp.2d 272, 284 (D. Mass. 2010).

[14] Wedge Water incorrectly relies on *Dorpan* for this point.  In that case, the court addressed the special situation where a prior remote common-law user had carved out a footprint that created a

d.   Wedge Water is Already Disrespecting This Court's Exclusive Prerogative to Rule on Venue.

Wedge Water has purposefully further entangled this matter in a procedural quagmire. Counsel for Wedge Water dismissed Ocean Spray's reasonable proposal that the parties submit a joint motion setting out a proposed briefing schedule in both forums (Dckt 12, Exh 8), choosing instead to reassert its false narrative of having been misled by Ocean Spray, responding that it would be seeking a preliminary injunction in the California court, and demanding that Ocean Spray immediately agree to provide discovery and to transfer this case to California.  *Id.*  In fact, today, on May 10, 2021, counsel for Wedge Water announced that it would be seeking an emergency *ex parte* discovery order from the California court that same day unless Ocean Spray gave it the demanded discovery. Satterthwaite Decl. at ¶¶ 18-22.  If Wedge Water's need for a preliminary injunction is as urgent as it says, despite the flaws in the merits of its case, it should presumably proceed in this Court instead of wasting time fighting about venue.[15]

---

limited geographic exception to the otherwise presumptive nationwide right of the owner of an incontestable federally-registered mark, which has nothing to do with the case at bar.  "Because the parties agree that HMI is the senior user of the Meliá mark in Puerto Rico, the rights conveyed to Dorpan under the Lanham Act are limited by the extent of any rights HMI acquired under Puerto Rico law before Dorpan's federal registration became incontestable. Hence, before we can determine the contours of Dorpan's rights under federal law, we must determine the rights held by HMI under Puerto Rico law." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 63 (1st Cir. 2013).

[15] The Court should disregard the statement and feigned sense of urgency in Wedge Water's Memorandum that Ocean Spray's "conduct" has "already caused consumer confusion and irreparable harm."  Dckt 11 at 7.  This serious factual allegation is not supported by a declaration.  Moreover, the alleged, hearsay, instances of confusion described in The Letter show that the persons making the statements were not confused, as they *knew* that Ocean Spray's products were not put out by Wedge Water.  Dckt 1 Exh 2.  If consumers know enough even to *inquire* as to whether there is a relationship, they are not "confused" for purposes of establishing trademark confusion.  *See* Restatement Third, Unfair Competition § 23, comment c (1995) ("Evidence of inquiries by customers as to whether the plaintiff and the defendant are associated, however, may not establish the existence of actual confusion if the nature of the inquiries indicates that consumers perceive a difference between the designations and are skeptical of the

Wedge Water has signaled its intention to disregard and disrespect the jurisdiction of this Court, as the venue of the first-filed action, to decide venue, by seeking a preliminary injunction in the other court, and demanding discovery in that court. Ocean Spray, of course, refused to agree to Wedge Water's demands and has properly filed a Motion to Stay the California litigation while this Court determines whether to grant or deny Wedge Water's motion to transfer. *Id* .[16]

---

existence of a connection between the users"; *quoted in* 4 McCarthy on Trademarks and Unfair Competition § 23:16 (5th ed.)).

[16] See, *e.g., Veryfine*, 124 F.Supp.2d at 26 (first-filed court should decide venue and the second court should stay the second action).

III.     <u>CONCLUSION</u>

For the foregoing reasons, this case should remain in Massachusetts, and Wedge Water's

Motion to Transfer should be denied.

Respectfully submitted,

OCEAN SPRAY CRANBERRIES, INC.

By its Attorneys,

*John R. Snyder*
John R. Snyder
BBO No. 471480
Potomac Law Group
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: (617) 285-1790 | Fax: 617-830-9994
**jsnyder@potomaclaw.com**


Of Counsel:
Julia Anne Matheson
(*Pro hac vice* motion  filed)
Janet F. Satterthwaite
(*Pro hac vice* motion filed)
Potomac Law Group
Suite 700
1300 Pennsylvania Ave NW
Washington DC 20004
**jmatheson@potomaclaw.com**
**jsatterthwaite@potomaclaw.com**
Tel: 202-486-1578

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2021, the foregoing Opposition was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


/s/*John R. Snyder*